UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JUAN D. DIAZ<br><br>    Plaintiff,<br><br>    v.<br><br>CALIBER HOME LOANS, INC.;<br>MERSCORP HOLDINGS, INC.;<br>NEWREZ LLC; and FEDERAL<br>NATIONAL MORTAGE<br>ASSOCIATION, as Trustee for<br>Guaranteed REMIC Pass-Through<br>Certificates Fannie Mae REMIC<br>Trust 2022-27,<br><br>    Defendants. | C.A. No. 1:24-cv-00307-MSM-AEM |

# MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Juan D. Diaz sued Caliber Home Loans, Inc., Merscorp Holdings, Inc., NewRez LLC, and Federal National Mortgage Association, as Trustee for Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2022-27 (collectively "Defendants") bringing four causes of action. (ECF No. 1.) Count One is to Quiet Title. *Id.* ¶ 50. Count Two claims the Defendants violated his rights under the Real Estate Settlement Procedures Act ("RESPA"). *Id.* ¶ 54. Count Three alleges a violation of the Consumer Credit Protection Act ("CCPA"). *Id.* ¶ 62. Count Four alleges a violation of the Fair Debt Collection Practices Act ("FDCPA"). *Id.* ¶ 67.

The Defendants move to dismiss Mr. Diaz's Complaint under Fed. R. Civ. P. 12(b)(6), arguing that the mortgage debt remains unsatisfied, that they have not violated Mr. Diaz's statutory rights, and that they have not waived collection of the debt or released his obligation to satisfy the mortgage loan. (ECF Nos. 8 & 9.)

For the reasons discussed below the Court GRANTS the Defendants' Motion to Dismiss (ECF No. 8).

## I. BACKGROUND

As required on a motion to dismiss, the Court must accept the Complaint's well-pleaded facts as true and discard any conclusory assertions and legal conclusions.[1] *A.G. ex rel. Maddox v. Elsevier, Inc.*, 723 F.3d 77, 80 (1st Cir. 2013).

On May 2, 2022, Mr. Diaz and his wife Nicole Diaz ("the Diazes") entered into executed a promissory note (the "Note"), made payable to Caliber Home Loans, Inc. ("Caliber") in the amount of $457,900.00. (ECF No. 1-1 ¶ 1.) The Note requires that the Diazes make payments on the first day of each month, starting on June 1, 2022, until paid in full or May 1, 2052. *Id.* ¶ 3. Upon signing the Note, the Diazes agreed "that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" *Id.* ¶ 1.

---

[1] The Defendants submit that for the purposes of resolving this Motion, the well-pleaded factual allegations in the Plaintiff's Complaint should be accepted as true. (ECF No. 9 at 3 n.1.) But where the Plaintiff's allegations contradict documents included as part of this Motion to Dismiss, the Defendants maintain those allegations should be disregarded. *See id.*; *Clorox Co. P.R. v. Proctor & Gamble Consumer Co.*, 228 F.3d 24, 32 (1st. Cir. 2000).

As security for repayment of the Note, the Diazes executed a mortgage to Caliber, and its successors and assigns, for the property located at 1040 Douglas Turnpike, Burrillville, Rhode Island ("the Property"). (ECF No. 1-2 at 1, 3.) The mortgage was duly recorded on May 2, 2022. *Id.* at 1. The mortgage agreement incorporates the Note and reiterates its terms and conditions. *Id.* ¶ E.

According to the Defendants, the Diazes made regular payments to Caliber towards their mortgage from June 1, 2022, to September 1, 2023. (ECF No. 9 at 2.) On September 14, 2023, Caliber advised the Diazes that the mortgage would be transferred to NewRez, with the same terms and conditions, effective October 1, 2023. (ECF No. 9-1 at 1.) From there, all monthly payments towards the mortgage were to be made payable to NewRez. *Id.* In another letter dated October 6, 2023, NewRez advised the Diazes that the loan was fully transferred from Caliber and that all monthly payments were to be made payable to NewRez. (ECF No. 9-2 at 1.) At the time of transfer, the balance of the mortgage loan was $448,260.07 in principal and $834.83 in escrow. *Id.* at 4.

Shortly after, the Diazes claimed that NewRez failed to provide accurate information to the consumer reporting agencies. (ECF No. 9-3 at 1.) NewRez responded in correspondence dated December 1, 2023, and December 5, 2023, and advised the Diazes that it could not determine what incorrect information they had allegedly provided to the consumer reporting agencies.[2]  (ECF No. 9-3 at 1, 4.)

---

[2] While the Court is ordinarily confined to the four corners of the complaint when ruling on a motion to dismiss under Rule 12(b)(6), here, the Court may consider the Defendants' letters to the Diazes in deciding this Motion because the

3

NewRez responded to the Diazes' request for loan information and provided them with the date the loan originated, the amount of the original principal obligation, the type of loan. *Id.* The letters also indicated the date the loan was transferred from Caliber to NewRez and gave confirmation that NewRez began furnishing the loan information to the consumer reporting agencies after that. *Id.* NewRez also reiterated the amount due per month, the date, and number of payments then due, and the current amount due on the loan. *Id.*

A few months later, in April 2024, the Diazes requested a validation of the mortgage debt. (ECF No. 9-4 at 1.) NewRez responded on April 19 in a letter to the Diazes, advising that it began servicing the loan in October 2023 following the transfer from Caliber. *Id.* The letter further provided (1) the current principal balance of the mortgage; (2) the current owner of the loan and their address; (3) the originator of the loan and date of origin; (4) the terms and original principal obligation under the mortgage loan; (5) the current escrow balance and interest rate on the loan; (6) the payments due as of the letter; (7) the date of the last full payment; and (8) past due installment payments. *Id.*

---

correspondence is referenced in the Complaint and central to the underlying claims. *See Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (When "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document the authenticity of which is not challenged . . . the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)"); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (in deciding motion to dismiss for failure to state a claim, court may consider "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to plaintiffs' claim, and "documents sufficiently referred to in the complaint" without converting the motion into one for summary judgment).

4

Following the April 2024 correspondence, the Diazes notified NewRez that they were disputing the entirety of the loan and requested the same information NewRez had provided on April 19. (ECF No. 9-5 at 1.) On May 10, Mr. Diaz also sent NewRez a "Non-Negotiable Notice of Acceptance," seeking the identical information provided in NewRez's April 16, 2024, letter via a "Non-Negotiable Notice of Debt Validation"; and an "Affidavit of Verification of Debt" from NewRez. (ECF No. 1-5 at 1.)

NewRez responded to the Diazes' requests with correspondence dated June 6, 2024, and provided copies of its prior acknowledgment letters, the mortgage loan documents, servicing transfer letters, and verification of the mortgage loan. (ECF No. 9-5.) NewRez explained that "[u]pon review of your correspondence, Shellpoint has determined that some of your inquires are overly broad and do not fall within the Scope of a Qualified Written Request because they are related to the origination of the loan or the trust . . . [a]s the servicer, Shellpoint is not required to respond to inquiries related to bank, underwriting subsequent sale or securitization, or determination to sell, assign, or transfer the servicing of the mortgage loan. Shellpoint is also not required to provide the original wet ink documents, nor the name and location of the document custodian."[3] *Id.* NewRez also advised the Diazes that it had determined their dispute "does not provide any specific details or events regarding servicing errors or any other specific information on which we can form the

---

[3] NewRez explained that it also does business under the name Shellpoint Mortgage Servicing. (ECF No. 9 at 5 n.3.)

5

basis for further investigation." *Id.* at 2.  Thereafter, NewRez provided the Diazes with the information necessary to validate the debt and reiterated their obligations under the mortgage and the Note. *Id.* Unsatisfied with this response, the Diazes sent additional correspondence requesting the same information discussed above. (ECF No. 9-6 at 1.)

Mr. Diaz claims that he and his wife sent NewRez a $457,900 negotiable instrument "as payment in full accord and satisfaction" of the mortgage loan. (ECF No. 1 ¶ 42.) The purported negotiable instrument contained five one-dollar Statue of Liberty stamps, a bar code, a claim to "Pay to the Order of Shellpoint Mortgage Servicing," and a claim for "presentation to the United States Treasure [*sic*], for conversion to book-entry securities." (ECF No. 1-4.)

Though Mr. Diaz claims that the purported negotiable instrument satisfies his mortgage debt, the Defendants insist that this is merely the Diazes' fraudulent attempt to be relieved of their mortgage debt. (ECF No. 1 ¶¶ 42—43; ECF No. 9 at 6.) The Defendants explain that the Diazes' mortgage loan has not been satisfied to date and remains delinquent. (ECF No. 9 at 6.)  Thus, the Defendants move to dismiss the Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## II. MOTION TO DISMISS STANDARD

On a Rule 12(b)(6) motion to dismiss, the Court accepts the complaint's "well-pleaded factual allegations" and takes "all reasonable inferences in favor of the non-moving party." *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022) (quoting *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017)).  The dismissal of a complaint for failure to

state a claim is appropriate when "the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable theory.'" *Lemelson v. U.S. Bank Nat. Ass'n*, 721 F3.d 18, 21 (1st Cir. 2013) (quoting *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 384 (1st Cir. 2011), *cert. denied*). In other words, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

### A. Count One: Claim to Quiet Title

In Count One, Mr. Diaz claims that "it is undisputed that Plaintiffs have and hold legal and equitable title to the subject property." (ECF No. 1 ¶ 50.)Still, the Defendants assert that Mr. Diaz's claim to quiet title must fail because the mortgage debt remains unsatisfied and thus, he lacks standing to quiet title based on Rhode Island's title law. (ECF No. 9 at 8.)

"A mortgagor lacks standing to bring a quiet title action as long as the mortgage remains in effect." *Searle v. Nationstar Mortg., LLC*, 618 F. Supp. 3d 2, 16 (D. Mass. 2022) (quoting *Rezende v. Ocwen Loan Servicing, LLC*, 869 F.3d 40, 43 (1st Cir. 2017)). In Rhode Island, until a borrower's mortgage debt is satisfied, the bank or mortgagee holds legal title to a mortgaged property. *Lister v. Bank of Am., N.A.*, 790 F.3d 20, 25 (1st Cir. 2015). Put differently, the title theory of mortgage law "splits

the title to a property in two parts: the legal title, which becomes the mortgagee's and secures the underlying debt, and the equitable title, which the mortgagor retains." *Id.* (cleaned up). Thus, when the mortgage was executed, the Diazes obtained equitable title to the property, while legal title to the home went to the mortgagee. *See id.* And legal title only transfers to the borrower upon satisfaction of the mortgage debt. *See id.* Because the Diazes' mortgage debt remains unsatisfied, Count One to Quiet Title is dismissed for failure to state a claim.

### B. Count Two: Violation of the Real Estate Settlement Practices Act

Mr. Diaz also alleges that NewRez has violated RESPA by "concealing the true beneficiary of the loan and the holder in due course." (ECF No. 1 ¶ 54). He further claims that NewRez "failed to adequately and timely respond to Plaintiffs' Negotiable Instruments." *Id.* ¶ 55.

To start, RESPA requires servicers to respond to a borrower's qualified written request (QWR). A QWR is a "written correspondence" from the borrower to the servicer that (1) identifies the borrower and the borrower's account; and (2) either asserts an error in the borrower's account or requests information related to the servicing of the borrower's account. 12 U.S.C. § 2605(e)(1). Once a servicer receives a QWR, it must "provide a written response acknowledging receipt of the correspondence within 5 [business] days." *Id.* § 2605(e)(1)(A). Then, within thirty business days, the servicer must (1) correct the error; (2) explain why it believes the account is correct; (3) provide the requested information; or (4) explain why the requested information is unavailable. *Id.* § 2605(e)(2).

8

To bring an action for violation of RESPA, a plaintiff must set forth facts to support that (1) the defendant is a loan servicer; (2) the plaintiff sent the defendant a valid QWR; (3) the defendant failed to respond adequately within the statutory period; and (4) the plaintiff is entitled to actual or statutory damages. *Id.* § 2605. A loan servicer who fails to respond to a QWR is liable for the failure, but a borrower is limited to actual damages unless the failure to respond was part of a "pattern or practice of noncompliance" with RESPA's requirements. *See id.* § 2605(f)(1)(B); *Lebeau v. U.S. Bank, N.A. as Tr. for Citigroup Mortg. Loan Tr. Inc.*, No. CV 17-329-JJM-PAS, 2019 WL 1077285, at *3 (D.R.I. Mar. 7, 2019). A plaintiff must demonstrate a causal link between the alleged violation and their claimed damages. *See Ortiz v. NewRez LLC*, 729 F. Supp. 3d 71, 74 (D. Mass. 2024), appeal dismissed, No. 24-1463, 2024 WL 4762937 (1st Cir. Aug. 2, 2024). *See also Wadsworth v. Kross, Lieberman & Stone, Inc.*, 124 F.4th 665, 668 (7th Cir. 2021) (holding plaintiff has concrete injury only if defendant's breach of statutory rights causes real harm, such as paying money not properly owed).

Mr. Diaz has failed to adequately plead a claim for a violation of RESPA because he has not alleged specific damages or identified how NewRez's alleged violations caused those damages. *See Ortiz*, 729 F. Supp. 3d at 74 ("To allege an actionable violation of RESPA, a plaintiff must allege specific damages and identify how the RESPA violations caused those damages."). *See also Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 592-93 (7th Cir. 2016) (summary judgment proper as there was no link between alleged damages and violation of RESPA).

The Diazes sent several letters to NewRez regarding their mortgage loan. NewRez responded to their inquiries with a Validation of Debt on April 16, 2024, and again on July 30, 2024. (ECF No. 9-4 at 1; ECF no. 9-6 at 1.) The Diazes also sent multiple letters dated May 22, 2024, May 28, 2024, May 29, 2024, and May 30, 2024, to which NewRez responded by letter dated June 6, 2024, providing the Diazes with copies of its prior acknowledgment letters and other information as required. (ECF No. 9-5 at 1.) NewRez further advised the Diazes that their dispute failed to provide enough detail regarding the alleged servicing errors and determined that the Diazes' inquiries were overbroad and did not qualify as QWRs and "[NewRez] is not required to respond to inquiries related to bank, underwriting, subsequent sale or securitization, or determination to sell, assign, or transfer the servicing of the mortgage loan." *Id.* Mr. Diaz's dissatisfaction with the responses he received from NewRez is insufficient to establish a violation of RESPA. Mr. Diaz has not alleged that he provided a valid QWR, that NewRez failed to adequately respond, or that he suffered actual damages. As such, Mr. Diaz has failed to plausibly allege a violation of RESPA. NewRez's Motion to Dismiss Count Two is granted.

C.   **Count Three: Violation of Consumer Credit Protection Act**

Arguing that the Defendants failed to provide notice of the assignment to FNMA, Mr. Diaz also alleges a violation of the CCPA. In turn, the Defendants insist that Mr. Diaz lacks standing to assert a claim under CCPA because even if he did not receive notice of the assignment of the mortgage, this is purely an "informational injury" that has caused no injury in fact. (ECF No. 9 at 14.) The Court agrees.

In relevant part, 15 U.S.C.A. § 1641(g) requires "the creditor that is the new owner or assignee of the debt [to] notify the borrower in writing" within thirty days after it was sold or transferred. The writing must include the identity, address, and telephone number of the new creditor, the date of transfer, a way to contact an agent of the creditor, the location where the transfer of det was recorded, and any other relevant information about the creditor assuming the debt. *Id.*

While § 1641(g) does require a new creditor to advise the borrower upon the transfer of a mortgage, even if Mr. Diaz did not receive notice, he has not alleged an injury for purposes of Article III standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 441 (2021) (explaining an informational injury that causes no adverse effects does not satisfy standing requirement). Indeed, the assignment of a mortgage is a public record, which NewRez told the Diazes they could obtain at their local recording office. (ECF No. 9 at 14.) So, Mr. Diaz's claim that he did not receive notice of the assignment, without anything more, amounts to purely an informational injury, which does not satisfy the case or controversy requirement. *See TransUnion LLC*, 594 U.S. at 441; *Fitch v. Fed. Hous. Fin. Agency*, C.A. No. 1:18-cv-214-JJM-PAS, 2021 WL 4901909, at *8 (D.R.I. Oct. 21, 2021).

And even so, as the Defendants argue "the assignment of mortgage has no bearing whatsoever on Borrowers' obligation to satisfy the mortgage debt." (ECF No. 12 at 6.) The Diazes needed to satisfy their mortgage debt, regardless of the creditor that holds legal title. Borrowers cannot claim legal title until their debt is satisfied,

11

which has not happened here, meaning that Mr. Diaz has not made sufficient allegations to support his CCPA claim. Thus, Count Three is dismissed.

### D. Count Four: Violation of Fair Debt Collection Practices Act

In Count Four, Mr. Diaz further alleges that the Defendants "failed to adhere to the provisions of the FDCPA by not validating the debt as requested" within thirty days as required by 15 U.S.C. § 1692(b). (ECF No. 1 ¶¶ 66—68.) For their part, the Defendants say that Mr. Diaz did not address his FDCPA claim in his opposition to their motion to dismiss. (ECF No. 9 at 16.) Even if that was not the case, the Defendants maintain they provided "all information required under FDCA as a loan servicer" including copies of its prior acknowledgment letters, the loan documents, transfer letters, and verification of the loan through payment history. *Id.*; *see, e.g.*, ECF Nos. 9; 9-4; 9-5; 9-6.

Mr. Diaz's does not identify an act or omission on part of the defendants that violated the FDCPA. To succeed on a claim under FDCPA, a plaintiff must show that they were "the object of collection activity arising from consumer debt," that the "defendants are debt collectors as defined by the FDCPA," and "engaged in an act or omission prohibited by the FDCPA." *Lema v. Nationstar Mortg., LLC*, 603 F. Supp. 3d 17, 21 (D.R.I. 2022) (cleaned up); *see also* Consumer Credit Protection Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq. Though Mr. Diaz claims that NewRez did not respond to his validation of debt request, NewRez told him that it is the loan servicer for FNMA as of October 1, 2023, and provided letters of validation of debt on April 19, 2024, June 6, 2024, and July 30, 2024. (ECF Nos. 9-4; 9-5; 9-6.) As such, Count

12

Four is dismissed as the Plaintiff has not sufficiently alleged a violation of the FDCPA.

## IV. CONCLUSION

For all these reasons, the Defendants' Motion to Dismiss (ECF No. 8) is GRANTED.

IT IS SO ORDERED.

_____
Mary S. McElroy,
United States District Judge

May 27, 2025